## Allen v. McCalla.

1. **Notice: MORTGAGE OF CHATTELS.** A mortgage of personal property, duly executed, though not recorded, and though the mortgagor retains possession of the property, is valid against existing creditors, with notice of the mortgage. The words "without notice," contained in section 2201 of the Revision, apply to creditors as well as purchasers.

2. —— **ACTUAL NOTICE: STATUTE CONSTRUED.** The notice contemplated by said section is not *actual* as contradistinguished from constructive, but includes both.

Alllen v. McCalla.

3. —— CONSTITUENTS OF ACTUAL NOTICE. Notice is actual where the purchaser either knows of the existence of the adverse claim, or is conscious of having the means of knowledge, and does not use them, whether his knowledge is the result of a direct communication, or is gathered from facts and circumstances. And where ·a person designedly abstains from making inquiry for the purpose of avoiding knowledge, he will not be regarded as a *bona fide* purchaser without notice, but as charged with the knowledge which his inquiries would have developed.

4. —— CONSTRUCTIVE NOTICE : ATTACHING CREDITOR. An attaching creditor, who has notice that a mortgage exists, to some one, on the 'property upon· which the levy is made, cannot defeat it by showing that at the time of the levy he believed that the mortgage was being withheld from record, in order to delay and defraud creditors.

5. —— NOTICE TO ATTORNEY. Notice to the attorney is notice to the client. Whether the notice to the attorney must be in the course ·of the transaction in which he is acting for his client, left undecided.

6. Mortgage: OF AFTER-ACQUIRED CHATTELS. Whether a mortgage will cover after-acquired chattels, unless the same are reduced to actual possession before the levy of an attaching creditor of the mortgagor, left an open question.

7. Attachment: LEVY. In order to constitute a valid levy of an attachment, the officer must do such acts as that, without the protection of the writ, he would be liable as a trespasser.

### Appeal from Polk District Court.

### THURSDAY, JULY 23.

REPLEVIN for a stock of fancy goods. The plaintiff claimed the right of possession by virtue of a mortgage executed to him by Huber & Drake. The defendant was sheriff of Polk county, and claimed the goods by virtue of a levy of a writ of attachment against Huber & Drake, issued at the suit of Northrup, Taylor & Co. There was a trial to a jury; verdict and judgment for defendant. The plaintiff appeals. The further necessary facts are stated in the opinion.

*Withrow & Wright* with *D. O. Finch* for the appellant.

I. We assume that an attaching creditor stands on no higher ground than a purchaser paying a present consideration. He has no higher equities or more secure legal *status* than the creditor who takes the property in payment of an antecedent debt. Upon a proposition so obvious it is not necessary to trouble the court with authorities. A knowledge which would charge a purchaser paying a present consideration, or the creditor taking the property in the absolute payment of his debt, will charge Northrup, Taylor & Co., with notice. See the opinion of STOCKTON, J., in *McGavran* v. *Haupt*, 9 Iowa, 84.

II. The statute declares mortgages of personal property, when the mortgaged property remains in possession of the mortgagor, invalid as against existing creditors or subsequent purchasers without notice. Rev. 1860, § 2201.

The notice required by the statute may be either: first, actual, or, second, constructive.

The instructions covered actual notice in its most restricted sense; rendering it necessary to discuss only the question of the sufficiency of what is generally termed constructive notice.

Constructive notice arises:

First. When the party charged has actual notice that the property in dispute is in fact charged, incumbered, or in some way affected; thereupon the court will bind him with constructive notice of facts and instruments, to a knowledge of which he would be led by an inquiry after the charge, incumbrance, or other circumstances affecting the property of which he has actual notice.

Second. When the party designedly abstains from inquiry for the very purpose of avoiding notice — a purpose which, when proved clearly, shows that he had a suspicion of the truth, and a fraudulent determination not to learn it.

This proposition is stated in very nearly the exact language of Vice-Chancellor WIGRAM, in *Jones* v. *Smith* (1 Hare, 55), in an opinion written avowedly with a view to restricting instead of extending the doctrine of constructive notice. See also, as sustaining this proposition, note to *Le Neve* v. *Le Neve*, 2 Eq. Lead. Cases, 138; *Wilson* v. *Miller & Beeson*, 16 Iowa, 111; *English* v. *Wapels*, 13 id. 15; *Whitebrent* v. *Jordan*, 1 Young & Colley (Exch.) 328; *Doyle* v. *Leas*, 4 Scam. 250; *Sterry* v. *Arden*, 1 Johns. 267; *Sigourney* v. *Mann*, 7 Conn. 324; *Pendleton* v. *May*, 2 Paige, 205; *Jackson* v. *Cobwell*, 1 Cow. 625.

III. The court instructed the jury, that the mortgage of Huber & Drake, as to property acquired after its execution, and not reduced to *actual possession* before the levy, was void.

Formerly, the courts held, with great uniformity, that a mortgage, being a sale, could transfer no title in the mortgagor. The common law of mortgages has been so modified by the modern rulings of the courts, that it now more nearly approximates the civil law of mortgages. The recognition of a mortgage as a *security only* leads the way to the modification of many of the older decisions, based upon the theory that it is a sale. As a sale, a present transfer of title, the courts could not hold otherwise than that a present transfer must be of a title existing. As a provision to secure the payment of a debt, there is no reason why it may not be made to apply to property to be subsequently acquired, as well as to that presently held by the debtor. The manifest tendency to so hold is rapidly harmonizing the common with the civil law relating to this class of contracts: "Those who bind themselves by any engagement whatsoever, may, for the security of their performance of their engagement on their part, appropriate and mortgage not only the estate they are masters of at the time of contracting, but like-

wise all the estate which they shall afterward be seized or possessed of. And this mortgage extends to all the things which they shall afterward acquire that are capable of being mortgaged, by what title soever it be that they acquire them, and even to those which are not in being when the obligation is contracted; so that the fruits which grow upon the land will be comprehended in the mortgage of the estate to come." 2 Domat's Civil Law (part 1, book 3, title 1, § 1, art. 5, p. 649), to which the editor adds in the note: "When a debtor who has mortgaged all his estate, happens to make a new purchase, the mortgage which his creditors have on the thing newly purchased commences only from the day that the purchase was made, and not from the day of their mortgage on the rest of the estate."

Again, this was a mortgage of a "stock of goods." To some extent, the stock should be considered as a unit. Portions are being sold and additions made. The additions made to a stock thus mortgaged may be considered in the nature of the "accessories" of the civil law: "Although the mortgage may be restrained to certain things, yet it will nevertheless extend to all that shall arise or proceed from that thing which is mortgaged, or that shall augment it and make a part of it. Thus the fruits which grow on the lands that are mortgaged, are subject to the mortgage while they continue unseparated from the ground. Thus, when a stud of horses, a herd of cattle, or a flock of sheep, is put in pawn in the creditor's hands, the foals, the lambs, and other beasts which they bring forth, and which augment the number, are likewise engaged to the creditor's security. Thus, when the bounds of a piece of ground that is mortgaged happen to be enlarged by that which the course of a river may add to it, the mortgage extends to that which has augmented the ground." Id. p. 650.

In *Gregg et al.* v. *Sanford* (24 Ill.), the mortgaged property included some real estate, a large amount of chattel property, and such corn and hogs as the mortgagor should purchase with the money loaned to him by the mortgagee and secured by the mortgage. The mortgage was not recorded. The hogs were levied upon by a creditor. The court in the majority opinion say: " We have examined with great care all the cases to which reference has been made on both sides, and we are by no means satisfied that a party cannot mortgage property to be acquired after the execution of the mortgage, provided the mortgage deed is properly executed, acknowledged and recorded, or possession taken of the property before any lien attached; and that a court of equity will protect the mortgage when the transaction is fair and honest."

After citing and discussing authorities, BREESE, J., continues: " The public good requires that contracts of this kind should be supported. Where a manufacturer is unable to prosecute business without aid from others, the industry of the country may be materially promoted by allowing him to pledge his future earnings to those who will make advances to him. * * * The defect in the case at bar is that the mortgage was not recorded, nor was possession taken of the hogs."

*Langton* v. *Horton* (1 Hare, 549), arose upon a deed of assignment by way of mortgage of a ship then at sea, together with her tackle, appurtenances and all oil, head matter and other cargo, which might be caught or brought home in such ship. A judgment creditor levied upon the property upon its arrival in port, urging that " the assignment is inoperative in so far as it related to things which were not in being at the time it was made." Said Vice-Chancellor WIGHAM: " It is impossible to doubt, for some purposes, at least, that by contract an interest in a thing not in existence at the time of the contract may,

in equity, become the property of a purchaser for value, the course to be taken by such purchaser to perfect his title, I do not now advert to; but cases recognizing the general proposition are of common occurrence."

The vice-chancellor then stated several illustrations, and held the mortgage valid as to the entire cargo, without reference to the time it was acquired.

In *Foreman* v. *Proctor* (9 B. Monroe, 124), it was held, " the interest of a party in property which he may perfect by the performance of an executory contract may be the subject of a mortgage or attachment in chancery."

In that case the mortgage was upon live stock, and conveyed an interest in its increase and produce, and was held valid.

In *Carr* v. *Allatt* (3 Hurls. & Norm. [Exch.] 965), Baxter on the 31st of November, 1855, borrowed of Julia Tweedale four hundred pounds, " and an indenture of assignment was executed between them reciting that " a certain farm, of which he was tenant, " was the security for that advance," and witnessing that " for the consideration aforesaid he granted and assigned to her all crops of corn, etc., and all other crops, standing or growing in or upon the farm occupied by him at B., or upon any other farm which he at any time during the contiuance of the security might occupy; and all his farming stock, tenant rights, and other rights which he might be entitled to on quitting his present or any after taken farm." " In February, 1857, Baxter took of another landlord twenty-five acres of land adjoining the farm he occupied, and he had acquired stock, etc., subsequently to the above assignment." After maturity the executors of Julia Tweedale, " entered on the farm and took possession of the effects and crops, both on the original land and on the additional land, part of the crops being cut, and the rest growing." Subsequently Baxter made an assignment for the benefit

of his creditors, and his assignee entered and ejected the executors; the assignee contending "that the former deed did not extend to the after acquired property, nor to the growing crops; at all events upon the additional land." The court sustained the right of the executors to the subsequently acquired property. Said Chief Baron POLLOCK: "The question turns entirely upon the construction of the deed of 3d of November, 1855, by which Baxter assigned to Julia Tweedale, the testatrix, all the crops, and all rights, etc., of his present or any after-taken farm. The question is, to what extent this operated so as to give her executors a right to take possession of the property in dispute, and to resist the claim of Carr under the second assignment to him in trust for creditors. We are all of opinion that the deed gives her executors a right to take all the chattels, stock and crops upon the land in his occupation."

Said Baron MARTIN, "I am of the same opinion. * * * The deed professed to convey all crops, etc., on any after-taken farm. If it rested there it would be sufficient, but what follows it in the deed places it beyond all doubt."

The doctrine is very clearly stated by Justice STORY in *Mitchell* v. *Winslow et al.*, 2 Story, 230. On the 1st of December, 1839, the Messrs. Ropes, manufacturers of cutlery, in Westbrook, Maine, borrowed of Mr. Winslow, of Havre, France, $15,000, payable in four years, with interest semi-annually, and to secure the payment of the same, executed a mortgage conveying to Winslow " all and singular all the machinery of every kind, which is in and belonging to our cutlery manufactory at Saccarappa, in Westbrook, with all the tools and implements of every kind thereunto belonging, together with all the tools and machinery for the use of said manufactory which we may at any time purchase for four years from this date, and

also all the stock which we may manufacture and purchase during said four years."

Judge STORY thus states the questions presented to the court for adjudication :

"The question, therefore, in effect, resolves itself into this, whether the mortgage, *quoad* future machinery, tools and stock in trade, is a valid mortgage or lien, by the laws of the State of Maine, as between the parties themselves, and, also, as between the mortgagee and the creditor of the mortgagor."

After reviewing the authorities, he thus states his conclusion :

"It seems to me a clear result of all the authorities, that whenever the parties, by their contract, intend to create a positive lien or charge, either upon real or upon personal property, whether then owned by the assignor or contractor or not, or personal property, whether it is then in *esse* or not, it attaches in equity as a lien or charge upon the particular property, as soon as the assignor or contractor acquires a title thereto, against the latter, and all persons asserting a claim thereto under him either voluntarily, or with notice or in bankruptcy."

The distinction which authorizes one construction of such contracts in a court of equity and another in a court of law, has passed away with the other, which treats a mortgage as a conveyance of the absolute title at law, and not the creation of a lien as a security in equity. One of the happy results of the modern legal reforms, is the banishment of the fine distinctions between law and equity, and the establishment of one rule of construction for all contracts and one class of remedies for wrongs.

On this and collateral points, see *Thomas* v. *Hillhouse*, 17 Iowa, 71; Drake on Attach. § 223; *Williams* v. *Brown*, 15 N. Y. 354.

The mortgage in *Hughes* v. *Corey*, 20 Iowa, was like the one in this case, and held valid by this court.

*C. C. Nourse* and *C. H. Gatch* for the appellee.

1. As to the construction of section 2201 of the Revision of 1860. In the examination of the statutes of other States, no statute has been found by us containing this precise language. The statutes of Ohio and New York use the words " existing creditors," and " subsequent purchasers" and " mortgagees in good faith."

That our statute was intended to mean the same thing, and that the words " without notice" and " in good faith" are in law equivalent terms, no lawyer can doubt. Yet, both in New York and Ohio, it is decided under their statute that the words " good faith" can have no reference to an existing creditor, because such words, as applied to an existing creditor, could have no appropriate application or meaning.

The whole argument is here in a nut-shell: the only reason of the State excepting subsequent mortgagees, and purchasers who have notice, is based upon the principle that such purchasers with notice are not purchasers in good faith.

If, then, the words " without notice " mean simply purchasers and mortgagees in good faith — if that is the reason of the statute, and the idea of good faith cannot apply to an existing creditor — then how can you apply these words, " without notice," to existing creditors?

Neither does the punctuation apply, because there is no comma after the word " purchasers," making the words " without notice " have any connection with the phrase " existing creditors," before the disjunctive " or."

2. We next call the attention of the court to section 2203 of the Revision defining the object of the statute requiring a record.

The record is substituted, not for notice alone, but for a change of possession. And such, the authorities hold, is the purpose of the statute. See 2 Hilld. on Mortgages, 443. That is to say, that by making the transaction public, open and notorious, you destroy the inducement to attempt a fraud. This is the protection given to existing creditors, intended by the statute. In other words, Allen never could have induced H. & D. to have executed a mortgage that was at once to be made open and public, because, first, they could not have obtained any further credit, and could not have continued business in their own name ; second, immediate notice to all existing creditors, would have alarmed them, and induced steps for immediate collection of the debt. By not complying with the law, Allen, therefore, secures, or claims to have secured, the advantage of the recording act. But, in this case, appellant does not claim actual notice, but ·constructive notice. Whatever may be the meaning of our recording act, in regard to the application of the words " without notice," this construction cannot be given to it.

The authorities show that the question of good faith cannot apply to existing creditors. We call attention here to the language of the court in the case of *White* v. *Cole*, 24 Wend. 124.

" Again, it is said the plaintiff had notice of the lien by mortgage. This is an objection of a very ancient date, one which has often been made, but never without being overruled. The obvious consequence of listening to it would be to furnish a ready expedient for protection to fraud of the kind now alleged in all cases. A creditor having notice of a fraudulent mortgage is a reason why he should bestir himself to avoid it. We are told that the plaintiffs concede the mortgage to have been *bona fide*."

The court then go on in the above case to show that because the mortgage is to secure a *bona fide* debt, that does not make it a *bona fide* mortgage as to creditors when it is not recorded. We ask the court to read this opinion on pages 124 and 125, as it presents a strong and conclusive answer to the argument of plaintiff in this case.

3. To supply the place of the record of a chattel mortgage, if any notice is sufficient it must be full and specific. The record of a mortgage upon or deed of real estate is not intended to supply the place of a transfer of possession; and if any notice is to be made equivalent to change of possession, it must be a notice equally full and specific. You cannot supply that change of possession with constructive notice. *Shepleigh* v. *Wentworth*, 13 Met. 362; *Smith* v. *Moore*, 11 N. H. 65; *Stowe* v. *Meserve*, 13 id. 46; *Dermyn* v. *Lincoln*, 13 Met. 202; *Travers* v. *Bishop*, 13 id. 304.

4. If notice is sufficient as against an existing creditor, it should be given within a reasonable time after the execution of the mortgage. Notice when the creditor is about to attach, encourages fraud and operates as a fraud upon creditors. *Stowe* v. *McGirve*, 13 N. H. 46; *Field* v. *Livermore*, 17 Missouri, 218; Drake on Attachment, § 74.

5. N. T. & Co. employed Phillips & Phillips only at the time they were about to bring this attachment suit. Any knowledge of P. & P. could not, before such employment, affect N. T. & Co.; hence such notice came too late.

6. The property remaining in possession of the mortgagor, in the absence of a compliance with the provisions of the statute, the mortgage was subject to the rule of the common law. It was presumptively fraudulent as to third persons. Therefore, Phillips and Phillips had a right so to treat it, unless notified of facts that removed such pre-

sumption. *Suiter* v. *Turner*, 10 Iowa, 525 ; 2 Kent's Com. 516, and authorities cited ; *Watson* v. *Williams*, 4 Blackf. 26 ; *Weeks* v. *West*, 2 Aiken, 64 ; *Bullock* v. *Williams*, 16 Pick. 34 ; *Shirtliff* v. *Willard*, 19 id. 211 ; *Clough* v. *Wood*, 5 Serg. & Rawle, 283 ; *Wheeler* v. *Kain*, 3 Pick. 257, n. 1 ; *Lyman* v. *Cessford*, 15 Iowa, 229 ; *Hildreth* v. *Sands*, 2 Johns. Ch. 35 ; 2 Hilld. on Mortgages, 442 ; *Ryoth* v. *Rowles*, 1 Vesey, Sr., 359 ; *Bloom* v. *Naggle*, 4 Ohio St. 54.

7. Notice to P. & P. to affect N. T. & Co. must have been received by P. & P. in the course of their employment as attorneys of N. T. & Co. Mere rumors or suspicions, based on general information in regard to parties, amounts to nothing. It is no notice of or knowledge of any facts. *Keenan* v. *Missouri State Ins. Co.*, 12 Iowa, 126 ; *Keenan* v. *Dubuque Ins. Co.*, 15 id. 375 ; *Jones* v. *Bamford*, 21 id. 219.

8. The equitable principle of diligence in requiring notice, has no application between mortgages of personal property and creditors, and can have no application to this case. Allen had actual knowledge that N. T. & Co. were creditors ; had correspondence with them, and withheld knowledge. He was *their agent* for the collection of this very debt, and it was as much his duty to communicate knowledge as it was that of P. & P. to acquire it. *Jackson* v. *Vanvackenberg*, 8 Cow. 264 ; *White* v. *Cole*, 24 Wend. 124.

9. The fourth instruction refused is embodied in numbers seven and twelve given. The fifth instruction refused is embraced in the second instruction given. The sixth instruction refused is embraced in the fourth and thirteenth given. The modification asked of instruction given is not law, because it takes the question of the weight of evidence from the jury and assumes there was not other evidence of fraud.

10. The mortgage cannot cover after-acquired property. *Chernneworth* v. *Tenney*, 10 Me. 397; *Cudworth* v. *Scott*, 41 N. H. 476; *Gardner* v. *McEwen*, 19 N. Y. (5 Smith), 123; *Rose* v. *Beren*, 10 Ind. 466; *Hamilton & Robinson* v. *Rogers*, 8 id. 301; *Chapin* v. *Crane*, 40 Maine, 560; *Ware* v. *Egmot*, 31 Eng. Com. L. and Eq.; *Coalman* v. *Freeman*, 3 Cush. 306; *Chapman* v. *Weimer*, 4 Ohio St. 481.

COLE, J. — The only questions made in this case arise upon the instructions given by the court to the jury, and the refusal to give others asked by the plaintiff. Without giving the instructions at length (they cover thirteen pages of the transcript), we will content ourselves by simply stating and deciding the questions involved in them.

I. Do the words "without notice" in section 2201 of the Revision apply to creditors as well as to purchasers?

1. NOTICE: mortgage of chattels. The section is as follows: "No sale or mortgage of personal property, where the vendor or mortgagor retains actual possession thereof, is valid against existing creditors or subsequent purchasers without notice, unless a written instrument conveying the same is executed, acknowledged like conveyances of real estate, and filed for record with the recorder of deeds of the county where the holder of the property resides."

This section of the statute, which is the same as section 1193 of the Code of 1851, has heretofore been under review in this court. In *Miller* v. *Bryan* (3 Iowa, 58) the plaintiff in the action (which was replevin) claimed the property by purchase; no bill of sale was recorded and the vendor continued in possession. The defendant was the sheriff and had seized the goods as the property of the vendor, under writs of attachment against him. The court instructed the jury, that if the vendor kept

possession, the sale was void unless there was a bill of sale acknowledged and recorded like deeds of real estate. The jury found for defendant and there was judgment accordingly. On appeal by the plaintiff, this court reversed the judgment, holding the instruction erroneous, and that it should have been qualified by saying "that the sale would not be valid against such creditors or purchasers without notice." Citing Code of 1851, § 1193.

The case of *Crawford* v. *Burton* (6 Iowa, 476) was also a controversy between a purchaser and an attaching creditor. The bill of sale was so defectively acknowledged as that no notice was imparted by its record. There was judgment for defendant. On appeal to this court that judgment was reversed, because, if the creditor had notice of the sale, that would be sufficient, although the bill of sale was not acknowledged or recorded. Citing *Miller* v. *Bryan, supra,* and Code of 1851, §§ 1193, 1211.

*McGavran* v. *Haupt* (9 Iowa, 83) is decisive of the question made in this case, as to the construction of the statute. In that case, the controversy, as in this, was between the mortgagee in an unrecorded mortgage, and an attaching creditor of the mortgagor. The court, per STOCKTON, J., say, "The question for our decision is, whether a mortgage of personal property, executed and acknowledged, but not recorded, where the mortgagor retains possession, is valid against existing creditors, with notice of the mortgage at the time of its execution. The provisions of the statute are peculiar. Code, § 1193. * * * * We think the validity of the mortgage is not made to depend solely on the fact of its being recorded before the goods are seized by the creditor on his legal process ; and that actual notice of its contents to the creditor is sufficient to give to the claim of the mortgagee, by virtue of his unrecorded mortgage, duly executed and acknowledged, a preference over the creditor with notice."

And this court, therefore, reversed the judgment of the District Court,—that court, the present chief justice then presiding therein, having ruled, that the mortgage, unrecorded, was of no validity, even though the creditor knew of its existence.

The opinion of the court in the case last cited, also clearly holds that the phrase " without notice," in the statute, applies to both creditors and purchasers ; that such is a fair construction of the statute, as well as reasonable in itself. This point is therefore *res adjudicata.* Not only so, but the decision is in accord with the judgment of the court, as now constituted. Nor is there, in our opinion, any soundness whatever in the argument at bar, to the effect, that such a construction of the statute tends to enable parties to commit, or facilitate them in the perpetration of, fraud. The filing of a mortgage for record, and the recording thereof, is but constructive notice of its existence ; and, if a party has notice of its existence otherwise than by its record, the full purpose of the statute is attained. Fraud cannot be perpetrated under cover of a notice to a party otherwise than by record, any more easily in degree or effect than when the notice is communicated by means of recording. Any distinction in this particular is imaginary, not real.

In support of this, we might cite the decisions under the early English registration acts, as well as under certain of our State laws. The early English, and some of our State statutes, made no exception in terms, as to purchasers, etc., with notice ; but all conveyances, mortgages, etc., were declared to be invalid as to subsequent purchasers, etc., unless recorded ; and yet nothing is better settled in England and in this country, than that a purceaser of a legal title, will be liable to all equities of which he had actual or constructive notice at the time of the purchase ; and a purchaser by deed duly registered

will, in England, be restrained in equity from availing himself of his purchase, when he had notice of a prior unregistered conveyance, although the statute does not use the words " without notice ;" and in this country it is held, both in law and in equity, that a conveyance, duly registered, passes no title whatever, when taken with a knowledge of the existence of a prior unregistered conveyance. The construction of the statute, and the rule, are the same, whether the words " without notice " are in the statute or not. See authorities cited in 2 Leading Cases in Equity, in the notes to *Le Neve* v. *Le Neve*, 182, 184. And the rule is equally applied, and it applies with as much force, to personal property as to real estate, and renders the purchaser of a chattel subject to all trusts and equities of which he had notice at the time of the purchase. See id. 183, and also *The Mechanics' Bank of Alexandria* v. *Seton*, 1 Peters, 299 ; *Clark* v. *Flint*, 22 Pick. 251. And this is especially so under our statute as to mortgage of personal property, and the construction given to it. See *Miller* v. *Bryan, supra ; Crawford* v. *Burton, supra ; McGavran* v. *Haupt, supra ; Kuhn* v. *Graves*, 9 Iowa, 303 ; *Campbell* v. *Leonard*, 11 id. 489 ; *Torbet* v. *Hayden*, id. 435 ; and *Hughes* v. *Cory*, 20 id. 399. In view of the authorities cited in notes to *Le Neve* v. *Le Neve*, above referred to, it might well be doubted whether, if the words " without notice " were omitted from our statute, the same construction as that heretofore given by this court, and now approved, would not necessarily follow.

We refer to this doctrine for the purpose of showing the radical error of counsel, in supposing that fraud would be facilitated by holding the words " without notice," in our statute, to apply to creditors as well as to purchasers. For if the courts of equity, both in England and in this country, found it necessary, in order

to prevent fraud, to go beyond the language of the statute, so as to apply it to parties having notice otherwise than by registration, it could hardly be contended that fraud would be facilitated by giving full force to the express language of our statute, which is in precise accord with those decisions. In other words, if courts of equity interpolate those words in the statute, where they are omitted, in order to prevent fraud, to give them force when used in the statute will not facilitate fraud.

It follows, from the foregoing, that the court erred in holding, that the words "without notice," in the section of the statute quoted, did not apply alike to creditors and purchasers, as it did by refusing the second instruction asked by plaintiff, and in other of the instructions given.

It may be proper, though perhaps unnecessary, to add, that the different construction which obtains in Ohio, New York, Massachusetts and other States, grows out of the different, not to say peculiar, language of the statutes of those States, and hence we do not deem it necessary to review the authorities from those States, cited and ably enforced by counsel in argument at bar.

II. The next question in order is, whether the notice contemplated by the statute is actual notice as contradis-
2. ——: actual tinguished from constructive notice, or whether
notice: statute
construed. it includes both. The District Court ruled, and so instructed the jury, that the notice must be actual.

This question has not been directly decided by this court, as applied to conveyances of personal property by mortgage or bill of sale. But the same words, "without notice," are used in the section in relation to real estate in substantially the same connection. Rev. § 2220. In *English* v. *Waples et al.* (13 Iowa, 57), which was a controversy between two mortgagees of real estate, the mortgage last in date having been first recorded, this court stated and held the general rule as follows: The last mortgagee

is entitled to priority unless he had actual or constructive notice of the contents or existence of the first, or such notice as was sufficient to put him, as a reasonable man, upon inquiry; and particularly so, if such inquiry would certainly lead to a knowledge or discovery of the right or equity of the first.

It is held, in the case of *Wilson* v. *Miller & Beeson* (16 Iowa, 111), which also was concerning real estate, that, where a party has actual knowledge of another's rights, or, what is the same thing in law, designedly abstains from making inquiry for the purpose of avoiding knowledge — or, in other words, where a party knows the rights of another, or fraudulently determines not to know them — in either case, he is not a *bona fide* purchaser.

The doctrine of these cases, if it is applicable to bills of sale and mortgages of personal property, as well as to conveyances and mortgages of real estate, is decisive of the question made in this case. We can see no reason or principle upon which to rest a distinction between the two classes of property. The words of the statute are the same in the one case as in the other. As a matter of conscience or equity, one man has no more right to appropriate the personal property of another, without consent or compensation, to his own use, than to thus appropriate his real estate. Whatever would bind the conscience of a man in the one case would bind it in the other. We feel constrained therefore to hold, as we do, that the word "notice" as used in one statute, means notice either actual or constructive.

But let us look a little at the special facts of this case as disclosed by the record. The law firm of Phillips & 3. —— con-    Phillips were the attorneys for Northrup, stituents of    actual notice. Taylor & Co. against Huber & Drake, in which case the attachment under which the defendant claims was issued. Two issues of fact were made be-

tween the parties and tried to the jury. One, whether the mortgage to the plaintiff was properly filed for record before the levy of the attachment, and the other, whether the attaching plaintiffs had notice of the existence of the mortgage prior to the levy of the attachment. Upon this last issue, the attorneys for the attaching plaintiffs were severally called as witnesses. J. H. Phillips testified: "I had the order for the note before I filed the petition; the reason I did not get the note before I filed the petition, is that that was our mode of making *that* collection; our mode in this case was not our general mode in other cases; I don't know how long we had that order; a few days before the attachment, I may have heard a rumor that Mr. Allen had a mortgage; * * I had no belief when the attachment was issued that Allen had a mortgage, because I did not know; I might have suspicioned something of the kind, but I don't know." William Phillips testified: "I don't know whether I had a conversation with Huber about the mortgage to Allen; * * I heard a rumor that there was a mortgage on the stock; I did not hear that Allen had a mortgage at the time I sued out the attachment; I thought it possible Allen had a mortgage on the stock, I suspicioned it; * * I never had a belief as to Allen's having a mortgage until after I called for the note; I will say that I suspected it before; I think I did not testify to the jury in this case that I believe that Allen had a mortgage; I don't know the exact words I used positively, but think I said, and intended to say, suspicioned; I say I had a suspicion; * * it was talked between us (partner and self) that if Allen had a mortgage, we would not call for the note, for fear Allen might put the mortgage on record and get ahead of us, if he had one."

In the notes to *Le Neve* v. *Le Neve* (2 Lead. Cases in Eq. 152), the learned American annotators in the com-

mencement of their notes of cases say: " Notice may be either actual or constructive. It is actual when the purchaser either knows of the existence of the adverse claim or title, or is conscious of having the means of knowledge and does not use them, whether his knowledge is the result of a direct communication or is gathered from facts and circumstances." Citing *The Mayor* v. *Williams*, 6 Maryland, 235.

Applying this law to the facts as disclosed by the testimony, extracts of which are given above, there can be but little difficulty in determining that the notice was actual within the liberal rule thus stated. But it is clear from all the instructions, as well by those given as by those refused, that the learned judge who tried this cause did not use the term *actual notice* with any such liberality of construction; he used the term in the sense of positive information as distinguished from a knowledge of facts and circumstances which would lead to such information. The authorities are reasonably well agreed, that where a party designedly abstains from making inquiries for the purpose of avoiding knowledge, such conduct is *mala fide* in itself and will not relieve the party from the effects of the knowledge his inquiries would have developed. Even where the doctrine of constructive notice is held the most rigid, and clear and decisive proof is required, those courts also hold, that, where a party has designedly abstained from inquiry for the purpose of avoiding knowledge, such conduct would show that the party had a " suspicion " of the truth and a fraudulent determination not to learn it, and therefore, would charge the party with notice of whatever an inquiry would have imparted. *Jones* v. *Smith*, 1 Harris Ch. 43; *Whitehead* v. *Jordan*, 1 Young & Coll. 328.

In view, then, of the special facts of this case, we have even less hesitation in holding that the court erred both

in giving and, in refusing instructions on this point, than we had upon the general principle above discussed.

III. Upon the subject of constructive notice, however, the court went even further against it than by its general statement of the doctrine. One instruction to the jury was as follows: "If you find that the attorneys of Northrup, Taylor & Co., believed that some one had a mortgage on the said stock of goods when they sued out the said attachment, and that it was being withheld from record to hinder, delay or defraud creditors from the collection of their debts, they were not bound to make further inquiry for said mortgage before commencing the attachment suit."

*4. —— constructive notice: attaching creditor.*

The doctrine of this instruction is, that, although a party has constructive notice of a mortgage, he may defeat it by his *belief* that the mortgage is void. In other words, that the *belief* of a party will determine the *rights* of his adversary. This cannot be the law. The rights of a party are to be determined by the *facts*, not upon *belief* simply. The belief of the attorneys of Northrup, Taylor & Co., that the mortgage was fraudulent, could not make it so; and the rights of the parties under the mortgage ought not and cannot be effected by such belief.

In *Ferrars* v. *Cheny* (2 Vern. 383), the defendant purchased an estate with notice of a post-nuptial settlement, which comprised the estate in dispute; it was argued in his behalf, that there was no recital of the articles for a settlement entered into before the marriage; and that for aught that appeared to the defendant, the deed was fraudulent as against a purchaser; but the court held, that he ought to have inquired of the wife's relations, who were parties to the deed, whether it was voluntary or made pursuant to an agreement before marriage, and, having notice of the deed, must purchase at his peril, and be bound by the effect and consequence of the deed. 2

Lead. Ca. in Eq. 143. This is an authority in point, and is adverse to the ruling of the court below. Upon this authority, as well as upon what we deem sound principle, we hold that it was error to give the eleventh instruction.

IV. Another question involved in the case is, whether notice to the attorney is notice to the client. As to this, we need only say, that the authorities are very uniform in holding, that notice to the attorney is notice to the client. But the further phase of the same question was somewhat discussed at bar, and that was, whether the notice to the attorney must be in the course of the transaction in which he is acting in behalf of his client. According to our view of the case, as presented in the transcript before us, it is not necessary for us to decide this question. It is reasonably clear, that all the notice the attorneys acquired of the plaintiff's mortgage was acquired during their employment by Northrup, Taylor & Co., and would therefore bind them.

*5. —— notice to attorney.*

V. Plaintiff's mortgage was of a certain stock of goods, describing them generally, situated in a certain store, etc., " together with all goods of every nature which may come into said store in the ordinary prosecution of our business." The question is now made, whether the mortgage can cover any goods not in the store at the date of its execution. The learned district judge charged the jury, that the plaintiff could not hold any goods, except such as were in the store at the time the mortgage was made, unless he had reduced the same to actual possession before the levy.

*6. MORTGAGE: of after acquired chattels.*

Without enlarging upon the question in this opinion (already too much extended), it may, perhaps, be admitted, that the weight and number of authorities hold with the court below, that a mortgage cannot cover after acquired property, unless possession thereof is taken. (See the authorities cited by counsel in their briefs.) But

there are authorities entitled to great consideration hold-ing the contrary view. (See those cited by appellant.) The tendency of modern cases is toward this view. We are not prepared to hold, that the weight and number of the authorities are in accord with the principle upon which the question rests. As the question may not arise upon another trial, and as we might not be entirely agreed upon it, as now advised, we leave the question open for future determination.

VI. A question is made in the transcript as to the sufficiency of the levy first made, as claimed by the defendant. Upon this, we content ourselves with stating the general rule. In order to make a legal and valid levy, the officer must do such acts as that, but for the protection of the writ he would be liable in trespass therefor. Any thing short of this would not confer upon the officer a right of property or posses-sion, certainly not as against a third party. *McBurnie* v. *Overstreet*, 8 Ben. Mon. 303–4; *Crawford* v. *Newell*, 23 Iowa, 453.

*7. ATTACH-MENT : levy.*

The eighth instruction, as given, was not of itself neces-sarily erroneous; and yet the plaintiff was entitled to the modification as asked.

We have thus disposed of every question made in the case, and the judgment of the District Court is

Reversed.