WACHUSETT NAT. BANK v. SIOUX CITY STOVE WORKS (HUB-
BARD et al., Interveners).

(Circuit Court, N. D. Iowa, W. D.    October 13, 1894.)

1. CHATTEL MORTGAGE—ENFORCEMENT AGAINST LEVYING CREDITORS—ESTOPPEL.
    Where a bank buys notes of the payee on the faith of a statement by the latter that the maker has a large capital, and is doing a prosperous business, when in fact such payee holds unrecorded chattel mortgages securing such notes and others on all the property of the makers for an aggregate amount greater than the actual value of the property, of which the bank has no knowledge, the mortgagee and its assignee for the benefit of creditors are estopped to set up such mortgages to defeat an attachment by the bank, levied after the mortgages are recorded.

2. SAME.
    The facts that the other creditors of the mortgagor represented by the assignee are holders of other notes secured by the mortgages, that when they purchased the notes they had no knowledge of such mortgages, and that they had no knowledge of, and did not consent to, the fraudulent acts of the mortgagee, will not enable the assignee to avoid such estoppel as against the bank, which does not consent to assume the position of a beneficiary of the mortgages.

This was a bill by the Wachusett National Bank, filed in proceedings for the appointment of a receiver of the Sioux City Stove Works, in which E. H. Hubbard, assignee for benefit of creditors of the Union Loan & Trust Company, was appointed such receiver, to settle priority of liens, and attacking the validity of certain chattel mortgages executed by the stove works to the trust company.

Wm. Milchrist and Swan, Lawrence & Swan, for complainant.
Wright, Hubbard & Bevington, for interveners.

SHIRAS, District Judge.    The questions in dispute in this proceeding grow out of the following state of facts:    The Daniel E. Parish Stove Company, in the year 1892, and prior thereto, was a corporation created under the laws of the state of Iowa, and was engaged in an extensive manufacturing business at Sioux City.

For the purpose of procuring money to be used in its business from time to time, it entered into a contract with the Union Loan & Trust Company, of Sioux City, under date of May 17, 1892, whereby it was agreed that the stove-works company should execute and deliver to the trust company its three several promissory notes,—one for $75,000, one for $25,000, and one for $100,000,—all payable on demand, the first-named note to be secured by the deposit of first mortgage bonds, the second note to be secured by a mortgage upon its real estate, fixtures, and machinery, and the third note by a chattel mortgage upon all the personal property of the corporation, including after-acquired property and manufactured goods. In the contract it is declared that "the purpose of giving said notes and securing the same as aforesaid is to enable the said party of the first part to procure a line of credit with the said party of the second part, and to borrow money on said notes and securities within the limits of said two hundred thousand dollars;" it being further agreed "that said notes, and the securities put up to secure them, shall stand and remain in the hands of the said party of the second part to secure any advances now made or that may be made hereafter, during the continuance of this agreement, by the party of the second part to the party of the first part, and the said notes and securities so put up shall stand and remain as security for any renewal of said advancement, or change in said advancements, the purpose of said securities being to secure any debt within the amount of said notes that may be due and owing the said party of the second part from the party of the first part at any time during the continuance of this agreement by reason of any advancement that may be made by the party of the second part to the party of the first part and not repaid." Subsequent to the date of this agreement the corporate name of the stove-works company was changed to that of the Sioux City Stove Works. In pursuance of the arrangement between the parties, the stove-works company, on the 17th day of May 1892, executed its three promissory notes for the sums of $25,000, $75,000, and $100,000, delivered to the trust company $75,000 of its first mortgage bonds, and executed and delivered to the trust company two mortgages covering substantially all the personal property of the corporation. Subsequently, on the 10th day of January, 1893, the Sioux City Stove Works executed its promissory note, payable on demand, to the order of the Union Loan & Trust Company, for the sum of $175,000, and to secure the same executed a chattel mortgage upon its personal property, it being therein declared that: "The intention of this instrument being that this note and this mortgage shall stand as full security for any advances made by said Union Loan & Trust Company to said Sioux City Stove Works upon said note and mortgage in addition to the said sums of money advanced by said Union Loan & Trust Company to this company under the previous note and mortgage made by this company to the said Union Loan & Trust Company." It appears that the trust company did not, from its own funds, advance or loan any sum to the stove-works company, but from time to time the latter company executed

its promissory notes, generally for the sum of $5,000 each, payable to the order of the Union Loan & Trust Company, which notes the latter company would indorse and sell to banks located in different sections of the country, and the money thus obtained would be paid to the stove-works company. On the 25th day of April, 1893, the Union Loan & Trust Company, being insolvent, executed to E. H. Hubbard an assignment of its property for the benefit of its creditors, under the provisions of the statute of Iowa upon that subject. Upon entering upon the trust thus created, the assignee found that the several chattel mortgages executed by the stove-works company as hereinbefore stated had not been filed for record, and thereupon, on the said 25th day of April, 1893, the assignee caused the same to be filed and recorded in the proper office in Woodbury county, and at once took possession of the property therein described. It also appears that in February, 1893, the Wachusett National Bank of Fitchburg, Mass., purchased, through the Union Loan & Trust Company, three notes for $5,000 each, executed by the Sioux City Stove Works, and coming due August 7, 8, and 9, 1893, these notes being payable to the order of the trust company, and being indorsed by it. On the 1st day of May, 1893, the Wachusett Bank brought an action at law in this court, aided by a writ of attachment, upon these notes against the maker thereof, and the writ of attachment was duly levied upon a large amount of the personal property of the stove-works company, which was then in the hands of E. H. Hubbard, assignee of the Union Loan & Trust Company. On the 2d day of June, 1893, a petition on behalf of creditors was filed in this court, asking the appointment of a receiver to take possession of the property of the stove works, and on the day named E. H. Hubbard was appointed receiver, and the property of the stove works was placed in his hands for the benefit of all interested, including the property levied on under the attachment process in favor of the Wachusett Bank. For the purpose of settling the rights of the parties, the Wachusett National Bank filed a petition in the proceedings for the appointment of a receiver, setting forth the lien claimed by it under the attachment process, and asking the court to direct the payment of the sums due it, as evidenced by the judgment obtained in its action at law on the notes issued by the stove-works company. Thereupon E. H. Hubbard, as assignee of the Union Loan & Trust Company, intervened in said proceedings, and filed a petition setting up the giving the notes and chattel mortgages to his assignor by the stove works, and averring that the lien created thereby was superior in law and equity to the lien of the Wachusett Bank in favor of the parties who had purchased the notes of the stove works indorsed by the trust company; and several of the banks who are owners of these notes have likewise intervened for the protection of their rights under the chattel mortgages executed to the Union Loan & Trust company. The question at issue is whether the lien created by the levy of the attachment in favor of the Wachusett Bank is superior at law or in equity to that created by the execution of the chattel mortgages.

It is well settled that the lien of a chattel mortgage as against third parties without actual knowledge of its existence dates from the time when it is filed for record in the proper county.    Allen v. McCalla, 25 Iowa, 464; Bacon v. Thompson, 60 Iowa, 284, 14 N. W. 312. As it is admitted that the chattel mortgages had been duly filed for record in the proper county on the 25th day of April, 1893, whereas the writ of attachment in favor of the bank was not sued out until May 1, 1893, it follows that at law the lien of the mortgages antedates and is superior to that of the attachment.    Are the equities of the situation such that the lien of the mortgages should be postponed and be held inferior to that of the attaching creditor? On behalf of the Wachusett Bank it is claimed that the trust company intentionally withheld the mortgages from record, concealed the fact of their existence, and misrepresented the business and financial standing of the stove works in order to induce the bank to purchase the notes of the stove works; and therefore the bank is entitled to estop the trust company, and all parties claiming under or through it, from asserting the priority of the lien under the mortgages.    The evidence in the case clearly shows that the trust company did intentionally withhold the mortgages from record, and when negotiating the sale of the notes of the stove works to the bank it represented that "the stove works have a capital of $200,000.    Their plant is a very extensive one, covering over seven acres of ground, and the company is doing a prosperous business,"—these statements being contained in a letter dated January 27, 1893, and upon the faith thereof the bank bought the notes.    Under these circumstances, if the question was simply between the bank and the Union Loan & Trust Company, it would be most inequitable and unjust to permit the trust company to assert and maintain the superiority of the lien, created by the mortgages to it, as against the equity existing in favor of the bank, growing out of the fact that the bank had been induced to purchase the notes of the stove works on the faith of the representation made by the trust company that it was doing a prosperous business, when in truth the trust company then held unrecorded mortgages covering the entire property of the stove works, and for an aggregate amount greater than the actual value of the property.    Blennerhassett v. Sherman, 105 U. S. 100; Goll v. Miller (Iowa) 54 N. W. 443.

It is, however, earnestly contended by the assignee that the facts in this case are such as to take the case out from the operation of the general rule recognized in the cases just cited, it being claimed that in fact the Wachusett Bank is one of the beneficiaries under the mortgages, and therefore cannot object to the enforcement of the lien thereof for the common benefit of all; and, further, that the real beneficiaries are the other creditors who now hold the notes of the stove works, and that these parties were ignorant of the acts of the trust company, did not consent thereto, and should not be estopped thereby.    In the agreed statement of facts it is admitted that the bank had no knowledge of the existence of the mortgages executed to the trust company until after they were

recorded, unless such knowledge is inferable from a statement contained in the letter of the trust company forwarding the notes to the bank, in which, following a description of the notes, it is said "All being amply secured by good collateral." It is entirely clear that the bank must have regarded this as a statement in regard to collaterals held by the trust company to protect it, in that it indorsed the paper, for the bank had already agreed to take the notes upon the faith of the statements contained in the previous letter of January 27, 1893, in which it is not stated that the stove-works notes were secured in any manner, and the bank never made any inquiry about any security, collateral or otherwise, but simply took the paper on the strength of the names of the maker and indorser; and therefore it cannot be held that the bank was charged with any knowledge of the actual existence of the chattel mortgages, or that it must be deemed to be one of the beneficiaries of the mortgage security, unless it has consented to assume that position. The mortgages, in terms, are given to secure only indebtedness due the trust company, and while, in equity, creditors may obtain the benefit thereof, they cannot be compelled to recognize the mortgages as existing for their benefit. If the mortgages had been executed to the trust company as a trustee for the common benefit of the Wachusett Bank and the other holders of the notes of the stove works, then there would be very great force in the argument that no one of the common beneficiaries could repudiate the instrument and estop his cobeneficiaries from asserting the validity of the lien created thereby, on the ground that the mortgages had not been duly recorded; but that is not the actual situation. The only parties to the mortgages are the stove works and the trust company, and the security created thereby is expressly declared to be for the protection of the trust company. The creditors now represented by the assignee of the trust company can claim an interest in the security only on the principle of subrogation. The trust company, by indorsing the paper of the stove works, has become liable thereon to the creditors, and therefore has the right to apply the securities to the payment of the stove-works notes. In equity the creditors who have the legal right to look to the assets of both the maker and indorser for payment are entitled to be subrogated to the rights of the trust company in regard to the securities held by it. Sheld. Subr. § 154. This is, however, an equity based upon the right of the surety, and to be worked out through it. Hall v. Railroad Co., 13 Wall. 367; Railway Co. v. Jurey, 111 U. S. 584, 4 Sup. Ct. 566; Phoenix Ins. Co. v. Erie & W. Transp. Co., 117 U. S. 312, 6 Sup. Ct. 750, 1176. In Sheldon on Subrogation (section 157) it is said:

"It is generally considered that, while the creditor has the right to be substituted to the place of the surety in a case in which the creditor has given indemnity to the surety, yet the creditor's right must be measured by that of the surety. * * * If the surety holds the property only by a conveyance which is fraudulent as against the general creditors of the principal debtor, the creditors' right can be no better than that of the surety, and will not prevail against the principal's general creditors."

In the agreed statement of facts it is stipulated that the holders of the notes of the stove-works company bought the same without actual knowledge of the existence of the unrecorded mortgages. They did not rely thereon in buying the notes, and therefore the only hold they now have upon the security created thereby is by claiming through and under the trust company, and in so doing they occupy no better position than that of the trust company; and as, against that company, the Wachusett Bank could undoubtedly plead and maintain an estoppel on the grounds already stated, it follows that such estoppel is also good against the assignee of the trust company and the creditors who now seek to avail themselves of the benefit of the mortgage securities.

It further appears that certain portions of the buildings owned by the stove-works company were boarded off and called warehouses A, B, and C, and therein, from time to time, were stored the manufactured products, and warehouse receipts were issued and delivered to the Union Loan & Trust Company; but the real object of so doing is not made clear, and I can see nothing therein that affects the lien, rights, or equities of the Wachusett Bank. It follows, therefore, that the bank is entitled to hold the attached property as against the claim of the assignee of the Union Loan & Trust Company, and as against the claims of the creditors of the stove works based upon the chattel mortgages executed to the trust company, and is entitled to an order directing the receiver to pay the amount due the bank in preference to the assignee and other creditors.